UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

Plaintiff, Case No. 3:26-cr-8

vs.

ANTON HURSTON, District Judge Michael J. Newman

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS (Doc. No. 18)**

---

In this criminal case, Defendant Anton Hurston has been charged as a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Doc. No. 13. Before the Court is Defendant's motion to suppress (Doc. No. 18), filed through counsel; the Government's response in opposition (Doc. No. 19); and Defendant's reply (Doc. No. 30). Additionally, during a hearing on May 18, 2026, the Court heard oral argument by both sides on the merits of Defendant's motion. During that hearing, the Government presented witness testimony from the two arresting Officers, video footage from the Officers' front cruiser camera, and video footage from the Officers' body-worn cameras. For the reasons stated herein, the Court grants Defendant's motion to suppress.

**I.**

The following factual discussion rests primarily upon the Officers' testimony and video evidence submitted by the Government. In the context of a motion to suppress, when there is video evidence of the encounter, the court must view the facts "in the light depicted by the videotape." *United States v. Brown*, No. 23-3657, 2024 WL 4240558, at *2 (6th Cir. Sep. 19, 2024) (quoting

*Scott v. Harris*, 550 U.S. 372, 381 (2007)). Additionally, courts are permitted to disregard unsupported officer testimony that is contradicted by body-worn camera footage. *United States v. Loines*, 56 F.4th 1099, 1107 (6th Cir. 2023).

On the evening of January 31, 2026, Dayton Police Officer Vicente Castanon, Jr. and his partner, Officer Bibebibyo Seko, were patrolling downtown Dayton in a marked cruiser. Doc. No. 25 at PageID 52–55. It was a cold winter night, and there was snow on the ground, but the streets had been cleared. Doc. No. 25 at PageID 56; Gov. Ex. 1, Cruiser Front Camera Video. Around 11:55 p.m. the Officers saw Defendant riding a bike without a visible rear light. Gov. Ex. 1. After the Officers observed Defendant for a few seconds, Defendant began to proceed through a red traffic light. *Id*. The Officers turned on the blue lights of the police cruiser and initiated a traffic stop. *Id*. Defendant immediately rode from the street up onto the sidewalk, continued down the sidewalk a few yards, and then dismounted his bike. *Id*.

The Officers pulled over their patrol car, exited the vehicle, and approached Defendant, who was facing the Officers and holding his bike upright and parallel to the street along the right side of his body. *Id*.; Gov. Ex. 3, Body Worn Camera of Officer Vincente Castanon, Jr. Defendant was wearing a heavy winter jacket. Gov. Ex. 3. In his right hand, he held his bike handle and a phone; in his left hand, he held a winter glove. *Id*. As he walked toward Defendant on the sidewalk, Officer Castanon stated, “man” to which Defendant responded, “what happened?” Gov. Ex. 3. Officer Castanon then explained the basis for the traffic stop—the lack of lights on Defendant’s bike and the fact that Defendant had run a red light. *Id*. Defendant replied, “yes sir.” *Id*.

The following portion of the interaction occurred within the span of eight seconds. *Id*. Officer Castanon asked, “Do you got your ID or anything on you?” *Id*. Defendant responded,

"yeah" and began to reconfigure the items he was holding. *Id*. He slightly shifted his body such that he could hold the bike, the glove, and the phone all in his left hand, and began reaching—without ever touching his waistband—toward his back pocket with his right hand, presumably to obtain his identification. *Id*. As Defendant was reaching toward his back pocket, Officer Castanon asked, "any weapons on you?" *Id*. Defendant responded, "no." *Id*. As Defendant was responding, Officer Castanon stated, "I'm going to pat you down real quick." *Id*. According to Officer Castanon, the way in which Defendant reached for his back pocket created reasonable suspicion that Defendant was carrying a weapon. Doc. No. 25 at PageID 76. At all times throughout this encounter, Defendant was calm, relaxed, and compliant. *Id*. at PageID 74–76. He made no sudden movements, made no attempt to flee, and his hands were always visible to the Officers. *Id*. at PageID 73–76.

Upon patting down the outside of Defendant's back pocket, Officer Castanon located a loaded magazine. *Id*. The Officers then placed Defendant in handcuffs. *Id*. Officer Bibebibyo then lifted Defendant's jacket, and located a firearm tucked into the front right side of Defendant's waistband. Gov. Ex. 2, Body Worn Camera of Officer Bibebibyo Seko. The Officers placed Defendant under arrest. Gov. Ex. 3. Defendant was subsequently indicted under 18 U.S.C. §§ 922(g) and 924(a)(8) on February 10, 2026. Doc. No. 13.

**II.**

The Fourth Amendment, applicable to state officers through the Fourteenth Amendment, *see United States v. Reed*, 993 F.3d 441, 446 (6th Cir. 2021), forbids "unreasonable searches and seizures" and provides, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. While warrantless seizures are presumptively unreasonable, *see*

*Bambach v. Moegle*, 92 F.4th 615, 628 (6th Cir. 2024), the Fourth Amendment allows temporary investigative detentions, *i.e.*, *Terry* stops, "so long as there is a reasonable suspicion supported by articulable facts that criminal activity may be afoot[.]" *United States v. McCallister*, 39 F.4th 368, 373 (6th Cir. 2022) (citations and quotations omitted). Also permitted are precautionary searches for weapons following a lawful *Terry* stop, *i.e.*, *Terry* frisks, when there is reasonable suspicion that the person being searched may be armed and dangerous. *Id.*

Reasonable suspicion is an "elusive" concept without a precise definition. *Id*. It requires more than a hunch or gut feeling but is less demanding than probable cause. *Id*. at 373–74. To determine whether a *Terry* stop and a subsequent *Terry* frisk were justified by reasonable suspicion, a court views "the totality of the circumstances through an objective lens, asking whether there was a moderate chance, arising from articulable facts and inferences, that the person stopped was engaged in criminal activity (*Terry* stop) and was armed and dangerous (*Terry* frisk)." *Id.* at 374–75. The Court's inquiry focuses on what the officers actually observed, not the officers' subjective interpretation of their observations. *United States v. Jordan*, 100 F.4th 714, 723 (6th Cir. 2024).

**III.**

Defendant argues that suppression is warranted in this case because the arresting Officers lacked reasonable suspicion to conduct the *Terry* frisk that ultimately led to discovery of his firearm. Doc. No. 30 at PageID 138. Having carefully reviewed the parties' arguments and the video footage of Defendant's encounter with the arresting Officers, the Court agrees.

The Government points to a "mosaic of facts" which led the Officers to believe that Defendant was armed and dangerous. These facts include the time of night, the location of the stop, the weather, the way Defendant was holding his bike, and Defendant's posture and demeanor.

Doc. No. 29 at PageID 130–33. The Government's arguments, even when taken together, are unpersuasive. As the Sixth Circuit has previously stated, "it is difficult to imagine a case where police officers could not point to something to provide slight additional justification for a frisk." *United States v. Robinson*, No. 97-3142, 1998 WL 322656, at *5 (6th Cir. May 22, 1998). Here, Defendant was simply biking at night in a downtown area, wearing a winter jacket in cold, snowy weather, and complying with the Officers' requests. Nothing about the situation suggested that Defendant was armed and dangerous.

Moreover, the Officer testimony contradicts the Government's argument that a compilation of otherwise innocent and explainable facts gave rise to reasonable suspicion. In fact, Officer Castanon testified that it was not until Defendant reached for his back pocket that he felt Defendant could be carrying a weapon. Doc. No. 25 at PageID 76. As a threshold matter, the video evidence shows that, contrary to the Government's assertion, Defendant never engaged in any unusual "sweeping motion from front to back that passed over the area of his waistband[.]" Doc. No. 29 at PageID 133. The footage, on the other hand, shows that, after readjusting his belongings, Defendant merely reached directly for his back pocket. Defendant had no other way of reaching this area—anyone in Defendant's physical position would have had to pass their hand over their waistband area in order to access his or her back pocket. Further, Defendant only began reaching in order to comply with the Officer's request for identification.

Even if, as the Government contends, Defendant's movement was unusual or indicative of a weapon being located near his waistband area, Officer Castanon opted to initiate the frisk on Defendant's *back* pockets. This sequence of events undermines the argument that the *front* waistband "sweep" gave rise to reasonable suspicion. If the purpose of a *Terry* frisk is officer safety, *see United States v. Campbell,* 486 F.3d 949, 955 (6th Cir. 2007) (quoting *Terry v. Ohio,*

392 U.S. 1, 88 (1968)), it does not follow that a frisk would begin in a place other than where the officer suspects a weapon is located. *Cf. United States v. Noble*, 762 F.3d 509, 523 (6th Cir. 2014) (finding no reasonable suspicion and noting that, after noticing the defendant was unusually nervous, the officer proceeded to return to his cruiser, evaluate window tint, and perform a field sobriety test on another person before frisking the defendant). At most, the Officers here had a hunch, or an unparticularized suspicion, that Defendant was armed and dangerous. It therefore cannot be said that reasonable suspicion existed at the time Defendant was frisked.

**IV.**

Accordingly, Defendant's motion to suppress is **GRANTED**.

**IT IS SO ORDERED.**

October 7, 2026

s/*Michael J. Newman*
Hon. Michael J. Newman
United States District Judge